

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
01/28/2011

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| CARRIE MORRIS, | ) | CASE NO. 10-32110-H3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| FIRST NATIONAL BANK | ) | |
| OF EAGLE LAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 10-3241 |
| | ) | |
| CARRIE MORRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held a trial in the above captioned adversary proceeding.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered denying the requested relief.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Carrie Morris ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 12, 2010.  A discharge was entered on August 13, 2010.  The Chapter 7 case was closed on December 21, 2010.

In the instant adversary proceeding, First National Bank of Eagle Lake ("Plaintiff") seeks a judgment determining that Debtor owes Plaintiff a nondischargeable debt in the amount of $138,316. Plaintiff asserts that Debtor willfully and maliciously injured Plaintiff by deliberately and intentionally selling property securing its promissory notes.

Debtor testified that prior to 2008, Debtor and her then-husband, Luis Meza, operated an auto sales and repair business in Rosenberg, Texas, through a corporation called Amigo Autos, Inc. ("Amigo"). She testified that Amigo would buy cars, based on a floor plan note held by Plaintiff, and would make interest payments. Amigo would recondition and sell the cars, and would pay to Plaintiff the amount Plaintiff had loaned with respect to each car as it was sold.

Debtor testified that she gave birth to two children, one in 2006, and another in 2008. During the period prior to December, 2008, Meza was responsible for the day to day operation of Amigo.

Debtor testified that she had operated the business, on real property leased from her father, for approximately 20 years. She testified that her father subsequently died, and that her mother transferred the real property to her before 2008.

On November 13, 2008, Debtor signed a note payable to Plaintiff, in the original principal amount of $718,082. The note recites that Debtor has granted to Plaintiff a security

interest in the real property.  (Plaintiff's Exhibit 1).  Debtor also signed a commercial security agreement, covering, <u>inter alia</u>, equipment and inventory.

Debtor testified that, in December, 2008, she began to discover irregularities in the conduct of Amigo's corporate business by Meza.  She testified that she discovered that some of the cars Plaintiff's records indicated Amigo should have were not on Amigo's lot.  She testified that she discovered there were no funds in Amigo's bank accounts.[1]

Debtor testified that, when she discovered that several vehicles were missing from Amigo's lot during December, 2008, she borrowed $78,000 from her mother, in order to make payments to Plaintiff.  She testified that, when she discovered that additional vehicles were missing from Amigo's lot during March, 2009, she executed a second mortgage on her home, in order to obtain funds to pay $100,000 to Plaintiff.

Debtor testified that Plaintiff's loan officer, James Vincek, directed her to make payments on the Amigo floor plan note, rather than on the real property.

Debtor testified that, during May, 2009, she notified Plaintiff that she was selling Amigo's equipment, in order to make payments to Plaintiff.  She testified that she wanted to refocus Amigo's business on auto sales, and sell the assets related to the auto repair and reconditioning business.  She

---

[1]Debtor has subsequently become divorced from Meza.

testified that she continued selling Amigo's equipment during the period from May, 2009 through November, 2009.

Debtor testified that she sold equipment by listing it for sale online. She testified that she reviewed competitive listings, and also discussed the value of the equipment with a prospective purchaser, in order to determine the asking prices of the items of equipment she sold.

Debtor testified that, during the period from May, 2009 through November, 2009, she made payments to Plaintiff. She testified that the source of funds for these payments included the sale proceeds of equipment Debtor had sold, and also money borrowed from her accountant. The court finds Debtor's testimony competent and credible.

Vincek testified that Plaintiff foreclosed on the real property on January 5, 2010. He testified that none of the equipment identified on the original list provided when Debtor obtained the loan remained at the real property after Plaintiff foreclosed.

Debtor testified that, after the foreclosure of the real property, she turned over the remaining vehicles to Plaintiff. She testified that, even after she received notice of Plaintiff's foreclosure of her real property, she continued to make payments to Plaintiff on Amigo's floor plan note.

Conclusions of Law

Section 523(a)(6) of the Bankruptcy Code excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

An injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm. Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598 (5th Cir. 1998); see also Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504 (5th Cir. 2003).

To prevail under Section 523(a)(6), a creditor must prove by a preponderance of the evidence that the debt is not dischargeable. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In the instant case, Plaintiff has failed to prove either an objective substantial certainty of harm or a subjective motive to cause harm. Debtor's credible testimony indicates that she made every effort to repay Plaintiff's loan, including borrowing from family and her accountant, taking a second mortgage on her home, and selling Amigo's equipment and inventory. There is no evidence that Debtor converted proceeds of sale the equipment to her own use, or that the price for which the equipment was sold was unreasonable. The court concludes

that Plaintiff has failed to meet its burden of proof.

Based on the foregoing, a separate Judgment will be entered denying the relief requested in Plaintiff's complaint.

Signed at Houston, Texas on January 28, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE